**POOLE & SHAFFERY, LLP**
David S. Poole (SBN 94690)
  dpoole@pooleshaffery.com
Samuel R.W. Price (SBN 255611)
  sprice@pooleshaffery.com
400 South Hope Street, Suite 1100
Los Angeles, CA 90071
Telephone: (213) 439-5390
Facsimile:  (213) 439-0183

Attorneys for Defendants
MICHAEL GERARD FLANAGAN, an individual,
dba Debt Enforcement Law Group, dba Law Office
of Mike Flanagan;
MICHAEL GERARD FLANAGAN,
as trustee of The Michael and Alice Flanagan Family
Trust dated July 25, 2009;
ALICE YICK FLANAGAN,
as trustee of The Michael and Alice Flanagan Family
Trust dated July 25, 2009; and
VIDEO SYMPHONY, LLC,
a California limited liability company

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>VIDEO SYMPHONY ENTERTRAINING, INC., etc.,<br><br>    Debtor. | Case No.: 2:15-bk-14744-BB<br>[Chapter 7] |
| RICHARD K. DIAMOND, as Chapter 7 Trustee,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL GERARD FLANAGAN, an individual, dba Debt Enforcement Law Group, dba Law Office of Mike Flanagan; MICHAEL GERARD FLANAGAN, as trustee of The Michael and Alice Flanagan Family Trust dated July 25, 2009; ALICE YICK FLANAGAN, as trustee of The Michael and Alice Flanagan Family Trust dated July 25, 2009; VIDEO SYMPHONY, LLC, a California limited liability company,<br><br>    Defendants. | Adv. No.: 2:16-ap-01294-BB<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION**<br><br>[Related to Docket No. 25]<br><br>Date:   November 29, 2016<br>Time:   2:00 p.m.<br>Place:  Courtroom 1539<br>        Roybal Federal Building<br>        255 E. Temple Street<br>        Los Angeles, CA 90012 |

i
**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION**

Defendant MICHAEL GERARD FLANAGAN, an individual, dba Debt Enforcement Law Group, dba Law Office of Mike Flanagan ("Defendant"), hereby opposes Plaintiff's Motion for Partial Summary Adjudication [Dkt. No. 25] (the "Motion").

This Opposition is based on the attached Memorandum of Points and Authorities; the Declaration of Michael Flanagan and the exhibits attached thereto, the Court's file in this matter, and on any oral argument that the Court may choose to hear at the hearing on the Motion.

DATED: November 8, 2016          **POOLE & SHAFFERY, LLP**

By:   /s/ Samuel R.W. Price
    David S. Poole
    Samuel R.W. Price
    Attorneys for Defendants

POOLE SHAFFERY
400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Plaintiff's Motion for Partial Summary Adjudication [Dkt. No. 25] is founded upon an erroneous conclusion: that the Accounts at issue are "accounts" as defined by Article 9 of the UCC.[1] From this erroneous conclusion, several further erroneous conclusions follow, namely that Flanagan's interest in the Accounts was not perfected and, therefore, the sale of the Accounts to Flanagan is subject to avoidance. In fact, the Accounts at issue are not "accounts" under Article 9 of the UCC, but rather "instruments." As instruments, no financing statement was required to perfect Flanagan's interest in the Accounts. Because Flanagan's interest in the Accounts was perfected prior to the petition date, the sales are not avoidable by the Trustee and the Trustee is not entitled to a judgment against Flanagan.

## II. STATEMENT OF FACTS

Defendant Michael Flanagan ("Flanagan") was President and majority shareholder of Video Symphony EnterTraining, Inc. ("Video Symphony"), the debtor in the underlying bankruptcy matter. Video Symphony operated a for-profit school, which provided vocational instruction to students. Upon enrolling in the Video Symphony program, each of the students completed and executed an Enrollment Agreement, which explicated the various terms, conditions, and legal obligations of payment for the Video Symphony program, and itemized the precise amount of tuition that each student would be obligated to pay for the educational services and products provided.[2] Furthermore, many of the students executed a Student Loan Promissory Note and Disclosures ("Promissory Note"), which was signed by the student and any co-signor,

---

[1] For the purposes of this Opposition, the California Commercial Code, which adopts the Uniform Commercial Code, shall be referred to as "UCC."

[2] A true and correct exemplar of an Enrollment Agreement, redacted to protect the privacy rights of the student, is attached to the Declaration of Michael Flanagan ("Flanagan Decl.") as Exhibit "A."

1
**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION**

POOLE▪SHAFFERY
400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

and expressly detailed the tuition, finance charges, total payments, and payment schedule for repaying the student loans.[3]

Video Symphony's funding relied, in part, on its students' ability to obtain financial aid in order to pay for the school's tuition. Accordingly, Video Symphony entered into an agreement with the United States Department of Education ("DOE"), allowing Video Symphony to participate in federal student financial aid programs. In mid-2013, Video Symphony began to experience difficulties in obtaining payments from the DOE for students' tuition. Eventually, Video Symphony began to experience serious cash flow problems. Unable to obtain funding from other sources, Flanagan undertook to personally provide cash flow to Video Symphony, and to also pay certain of Video Symphony's outstanding obligations.

On June 15, 2014, Flanagan executed a Bill of Sale ("First Bill of Sale"), pursuant to which he made a payment of $100,000 in cash to Video Symphony, and also made payment of $700,000 to Community Bank, where Video Symphony had an outstanding line of credit. In exchange for the $800,000 in value being provided to Video Symphony, Video Symphony conveyed to Flanagan certain assets, namely the accounts receivable for outstanding balances owed to Video Symphony by students who had signed an Enrollment Agreement to enroll in a Video Symphony vocational certificate program that started on or before July 1, 2013. The accounts conveyed to Flanagan were documented by Video Symphony Enrollment Agreements and Promissory Notes, which were physically transferred to Flanagan so that he could collect on the outstanding receivables.

On December 17, 2014, Flanagan executed another Bill of Sale ("Second Bill of Sale"), pursuant to which he made a payment of $850,000 to Community Bank to fully satisfy Video Symphony's outstanding line of credit. In exchange for the $850,000 in value being provided to

---

[3] A true and correct exemplar of a Promissory Note, redacted to protect the privacy rights of the student, is attached to the Flanagan Decl. as Exhibit "B."

2
**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION**

Video Symphony, Video Symphony conveyed to Flanagan the accounts receivable for outstanding balances owed to Video Symphony by students who had signed an Enrollment Agreement to enroll in a Video Symphony vocational certificate program that started after July 1, 2013. The accounts conveyed to Flanagan were documented by Video Symphony Enrollment Agreements and Promissory Notes, which were physically transferred to Flanagan so that he could collect on the outstanding receivables.

Flanagan has continuously maintained possession of the Enrollment Agreements and Promissory Notes transferred by Video Symphony pursuant to the two Bills of Sale[4] at all times. Furthermore, Flanagan has undertaken action to collect on some of the Accounts.

### III.  LEGAL ARGUMENT

#### A.  The "Accounts" Purchased By Flanagan Are Promissory Notes And Instruments Under The UCC

Plaintiff recites that the definition of an account includes a right to payment of a monetary obligation for services rendered or to be rendered, and from that concludes, with little evaluation, that the "Accounts" should be classified as "accounts" under the UCC.[5] Such contention is incorrect. On the contrary, the Accounts that Flanagan purchased from VS are, in fact, Promissory Notes and Instruments, as defined by the UCC.

##### 1.  Promissory Notes And Instruments Are Distinct From Accounts

The UCC distinguishes between "accounts," on the one hand, and "promissory notes" and "instruments," on the other. While an "account" includes a right to payment of a monetary obligation for services rendered or to be rendered, the definition explicitly excludes rights to payment evidenced by an instrument.[6] Therefore, if the writing is an instrument, it cannot be an

---

[4] For the sake of clarity, Defendant will follow Plaintiff's lead and refer to the assets conveyed by Video Symphony pursuant to the Bills of Sale as the "Accounts."

[5] See, generally, Motion at 5:23-6:18 [Doc. 25].

[6] UCC § 9102(2).

3
**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION**

account.

The UCC defines "instrument" as a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment.[7]

A "promissory note," as defined by the UCC, means an instrument that evidences a promise to pay a monetary obligation, does not evidence an order to pay, and does not contain an acknowledgment by a bank that the bank has received for deposit a sum of money or funds.[8]

### 2. As Promissory Notes And Instruments, The "Accounts" Cannot Be Accounts Under The UCC

Whether a writing is properly characterized as an instrument under the UCC is a question of law.[9] Here, the answer to that question is indisputable. The Accounts that Flanagan purchased from VS were documented by the VS Enrollment Agreements and Promissory Notes. The Enrollment Agreements were signed and initialed by each student who enrolled at Video Symphony.[10] The Enrollment Agreements explicated the various terms, conditions, and legal obligations of payment, and itemized the precise amounts that each student would be obligated to pay for the educational services and products provided.[11] Similarly, the Promissory Notes, which were signed by the student and any co-signor, expressly detailed the charges, finance charges, total payments, and payment schedule.[12]

---

[7] UCC § 9102(47)

[8] UCC § 9102(65).

[9] In re Commercial Money Center, 392 B.R. 814, 827 (B.A.P. 9th Cir. 2008).

[10] Flanagan Decl. at ¶ 3, Ex. "A."

[11] Id.

[12] Flanagan Decl. at ¶ 4, Ex. "B."

4
**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION**

Both of these documents are instruments in that they evidence a right to payment of a monetary obligation and are of types that are transferred in the ordinary course of business,[13] and neither constitutes a security agreement or lease. Furthermore, the Promissory Notes are unmistakably "promissory notes" pursuant to the UCC, as they expressly evidence a promise to pay a monetary obligation and do not contain any acknowledgement by a bank that the bank has received a deposit.

In contrast, while an "account" may or may not be evidenced by a written record, it cannot be evidenced by a written obligation or express contract and constitute an account in the ordinary sense.[14] Because the Enrollment Agreements and Promissory Notes are written obligations or express contracts for payment of a fixed sum, they are clearly "instruments" under the UCC; therefore, they are expressly precluded from being deemed UCC "accounts."

**B.    No Financing Statement Is Required To Perfect Security Interests In Instruments Or Promissory Notes**

By erroneously concluding that the Accounts purchased by Flanagan were accounts under the UCC, the Plaintiff's analysis of the requirements for perfection of the security interest are also

---

[13] That student loans are readily and frequently assigned is widely documented. See, e.g., National Consumer Law Center, "Going to School on Robo-signing: How to Help Borrowers and Stop the Abuses in Private Student Loan Collection Cases." Available at: http://www.studentloanborrowerassistance.org/wp-content/uploads/2013/05/robo-signing-2014.pdf. ("The plaintiffs in [private student loan] lawsuits are not typically original lenders, such as financial institutions or for-profit colleges. Rather, the loans at issue have usually been transferred, sometimes multiple times, to one or more other entities. Plaintiffs therefore commonly include subsequent transferees or entities that have purchased a portfolio of student loans, such as holders of securitized loan pools or guarantors. They may also be entities that have merged with or acquired loan holders, as well as entities such as loan servicers or debt collection agencies that have been assigned student loan debts for the purpose of collection.")

[14] 1 Cal. Jur. 3d Accounts and Accounting § 1 (3d) (citations omitted); see also Parker v. Shell Oil Co., 29 Cal. 2d 503, 507, 175 P.2d 838, 841 (1946) ("Sums which become due under an express contract (such as rent under a lease) are not ordinarily treated by the parties as items of an open account."); Crane v. Stansbury, 173 Cal. 631, 635, 161 P. 7, 9 (1916) (a contract in the form of a promissory note for the payment of a named sum fixed by the note does not require any settlement, but is a contract and not an account).

5
**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION**

erroneous. Prior to perfecting a security interest, such interest must attach and become enforceable.

### 1. **Flanagan's Security Interests in the "Accounts" Attached and are Enforceable**

Under the UCC, a security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral.[15] A security interest is enforceable against the debtor and third parties with respect to the collateral only if each of three conditions is satisfied. First, the creditor must have given value.[16] Second, the debtor must have had rights in the collateral or the power to transfer rights in the collateral to a secured party.[17] The third condition is met in any one of four other ways, including where the debtor has authenticated a security agreement that provides a description of the collateral, and, where the collateral is not a certificated security, it is in possession of the secured party pursuant to the security agreement.[18]

#### a. **Condition 1: Value Given To Debtor**

Under the UCC, a person gives value for rights if the person acquires the rights, among other ways, "in return for any consideration sufficient to support a simple contract."[19] In regard to the Accounts, value has unquestionably been given. In connection with the First Bill of Sale, Flanagan made payments totaling $800,000, by way of a $100,000 payment directly to Video Symphony, and a another $700,000 as payment on Video Symphony's line of credit owed to a secured creditor of Video Symphony.[20] In connection with the Second Bill of Sale, Flanagan

---

[15] UCC § 9203(a) (unless an agreement expressly postpones the time of attachment).

[16] UCC § 9203(b)(1).

[17] UCC § 9203(b)(2).

[18] See UCC § 9203(b); In re Colortran, Inc., 218 B.R. 507, 512 (B.A.P. 9th Cir. 1997); Clinton v. Adams, No. CV10-09476-ODW PLAX, 2014 WL 6896021, at *7 (C.D. Cal. Dec. 5, 2014).

[19] UCC § 1204(4).

[20] Flanagan Decl. at ¶ 6.

POOLE▪SHAFFERY
400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390    FACSIMILE: (213) 439-0183

made a payment of $850,000 to the same secured creditor of Video Symphony as payment on the company's line of credit.[21] Accordingly, Video Symphony received value in the amount of $1,650,000 from Flanagan.

### b. Condition 2: Debtor's Rights In The Collateral

The collateral, the Enrollment Agreements and Promissory Notes, were owned by VS, and it is unquestionable that VS had full rights in them. Thus, this condition is satisfied.

### c. Condition 3: Option A – Authentication Of A Security Agreement With A Description Of Collateral

One of the methods for satisfying the third condition is by the debtor's authentication of a security agreement that includes a general description of the collateral.[22] Under the UCC, to "authenticate" means to sign, or to execute or otherwise adopt a symbol, or encrypt or similarly process a record in whole or in part, with the present intent of the authenticating person to identify the person and adopt or accept a record.[23] Accordingly, by merely signing the Bills of Sale evidencing the intent to transfer the Accounts to Flanagan, the security was authenticated.

As for a description of the collateral, a general description, including a description by category, is sufficient.[24] Here, the Bills of Sale described the collateral by category. Both applied only to Video Symphony students who signed an Enrollment Agreement (i.e., an instrument) to enroll in a Video Symphony vocational certificate program, while the First Bill of Sale was for such students who enrolled in a program that started prior to July 1, 2013, and the Second Bill of Sale was for such students who enrolled in a program that started on or after July 1, 2013.

---

[21] Flanagan Decl. at ¶ 7.

[22] UCC § 9203(b)(3)(A).

[23] UCC § 9102(7).

[24] UCC § 9108(a) ("a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described."); UCC § 9108(b)(2) (description by category).

7
**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION**

Therefore, by satisfying the three conditions, Flanagan's security interest in the Promissory Notes attached and was automatically perfected in accordance with Section 9309(4).

### d. Condition 3: Option B – Secured Party's Possession Pursuant To Debtor's Security Agreement

As an alternative to authentication and description of collateral, a security interest in instruments, among other types of collateral, attaches when the secured party takes possession of collateral pursuant to the security agreement.[25]  Under this option, the secured party's possession substitutes for the debtor's authentication if the secured party's possession is "pursuant to the debtor's security agreement," refers to the debtor's agreement to the secured party's possession for the purpose of creating a security interest.[26]  Therefore, if a secured party has possession of the collateral with the debtor's agreement, the creditor's security interest attaches and is enforceable even without an "authenticated" security agreement.[27]

### 2. Flanagan's Interest In The "Accounts" Was Perfected Upon Attachment Or By Possession

Flanagan's interest in the Accounts, which attached and was enforceable pursuant to Section 9203, was perfected without the need for filing a financing statement.  Section 9310 of the UCC effectively establishes the general rule – that a financing statement must be filed to perfect a security interest[28] – but also details several exceptions to this, which are directly applicable here: security interests in promissory notes are automatically perfected upon attachment,[29] and security interests in instruments can be perfected by the creditor taking possession.[30]

---

[25] UCC § 9203(b)(3)(B).

[26] UCC § 9203, comment 4.

[27] See id.

[28] Id., comment 2.

[29] See UCC §§ 9310(b)(2), 9309(4).

[30] See UCC §§ 9310(b)(6), 9313(a).

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION**

### a. Automatic Perfection Upon Attachment

While an instrument can be perfected by possession (as is true here and explained below), the UCC also provides that a security interest in the sale of a promissory note is perfected upon attachment.[31] Consequently, in such circumstances, it is not even necessary for the creditor to take possession of the collateral. As set forth above, Flanagan's interest in the Accounts lawfully attached under the requirements of Section 9203. Accordingly, Flanagan's interest in the Promissory Notes automatically perfected.

### b. Perfection by Possession

Notwithstanding automatic perfection of the Promissory Notes by attachment, Flanagan's interest in the entirety of the Accounts – both the Enrollment Agreements and the Promissory Notes – was perfected by Flanagan's possession. Section 9313 expressly provides that a secured party may perfect a security interest in instruments by taking possession of the collateral.[32] Thus, it is not necessary to file an Article 9 financing statement to perfect a security interest in instruments if the secured party takes possession of the collateral.[33] Furthermore, possession of the collateral under Section 9313 is effective to perfect a creditor's security interest even without an authenticated security agreement, provided possession is pursuant to the debtor's agreement to create a security interest.[34] Under Section 9313, the creditor's security interest perfected at the time that the secured party takes possession and continues while the secured party retains

---

[31] UCC § 9309(4).

[32] UCC § 9313(a).

[33] Id., comment 2 (citing UCC § 9310(b)(6)).

[34] See UCC § 9203, comment 4 ("Possession as contemplated by Section 9-313 is possession for purposes of subsection (b)(3)(B)"); 4 Witkin, Summary 10th Sec Trans--PP § 53 (2005) ("The secured party's possession of the collateral under U.C.C. 9313, pursuant to the debtor's security agreement, substitutes for the debtor's authentication under U.C.C. 9203(b)(3)(A)"). Therefore, a secured creditor's possession of the collateral pursuant to an agreement with the debtor would perfect the creditor's interest and nullify any claims that the written agreement was deficient (e.g., due to an insufficient or inaccurate description of the collateral).

9
**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION**

possession.[35]

That Flanagan took and maintains possession of the Accounts is an uncontroverted fact.[36] Flanagan took possession of the Accounts prior to the Petition Date and has continued to remain in possession of the Accounts at all times since.[37] Given that the Accounts are instruments under the UCC, Flanagan's interest in the Accounts was perfected when he took possession of them and remains perfected to this day, and no financing statement is required.[38]

### C.  Plaintiff Cannot Avoid Flanagan's Interest In The Accounts

Plaintiff relies on Section 544 of the Bankruptcy Code, the "strong-arm clause," to argue that the Trustee is entitled to avoid the sale of the Accounts to Flanagan. However, Plaintiff's contention relies entirely on the erroneous conclusion that Flanagan's interest in the Accounts was unperfected. For a security interest to be subordinated to a lien creditor, the latter must have become a lien creditor before the security interest was perfected.[39]

The Trustee became a lien creditor on the petition date. However, because Flanagan's interest was perfected prior to that time, Plaintiff's rights as a lien creditor are subordinated to Flanagan's perfected security interests. Therefore, Plaintiff has no right to avoid Video Symphony's sale of the Accounts to Flanagan.

---

[35] UCC § 9313(d).

[36] See Complaint at ¶ 33 [Doc 25-1 at page 9 of 77] ("Plaintiff has demanded in writing that Michael … turn over … the Accounts to Plaintiff …."); Answer at ¶ 33 [Doc 25-1 at page 44 of 77].

[37] Flanagan Decl. at ¶ 8.

[38] It should also be noted that, although Flanagan is both the secured party in possession of the Accounts and an agent of the debtor, such fact is irrelevant, as explained in comment 3 to UCC § 9313: "Sometimes a person holds collateral both as an agent of the secured party and as an agent of the debtor. The fact of dual agency is not of itself inconsistent with the secured party's having taken possession (and thereby having rendered subsection (c) inapplicable)."

[39] UCC § 9317(a)(2); see also comment 2 to UCC § 9317 ("in general, after perfection the secured party is protected against creditors and transferees of the debtor and, in particular, against any representative of creditors in insolvency proceedings instituted by or against the debtor.").

10
**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION**

Since Flanagan's interest in the Accounts was perfected prior to the Trustee obtaining an interest as a lien creditor, the Trustee's interest is inferior to Flanagan's, as a secured creditor. Accordingly, the Trustee is not entitled to avoid the sales of the Accounts.

### D. **Trustee Is Not Entitled To A Judgment Against Flanagan**

The Plaintiff's claimed right to a recovery from Flanagan is contingent on the ability to avoid Video Symphony's sales of the Accounts to Flanagan. Because the Trustee has no such right, the Trustee also has no right to a judgment against Flanagan.[40]

### c. **CONCLUSION**

Based on the foregoing, the Trustee's Motion should be denied.

DATED: November 8, 2016                **POOLE & SHAFFERY, LLP**

By:   /s/ Samuel R.W. Price
    David S. Poole
    Samuel R.W. Price
    Attorneys for Defendants

---

[40] Notwithstanding the inability to obtain a judgment against Flanagan, the trustee's demand for judgment in the amount of $1,650,000, the amount that Flanagan has already paid to Video Symphony in exchange for the accounts – an amount that the trustee now contends is an accurate value of the Accounts sold to Flanagan – is lacking in any justification. In effect, the trustee is demanding that Flanagan pay $3,300,000 for accounts that the trustee concedes are now worth less than half of that.

Additionally, in asserting that Flanagan testified to the value of the Accounts, Plaintiff has clearly misstated evidence. The value of the Accounts, which Flanagan greatly disputes, is a material fact that would require a factual finding. Plaintiff has failed to adduce sufficient evidence to establish the value of the Accounts, which precludes Plaintiff's right to obtain the judgment sought.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
400 South Hope Street, Suite 1100, Los Angeles, CA 90071

A true and correct copy of the foregoing document entitled (*specify*): **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) November 8, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Michael Jay Berger    michael.berger@bankruptcypower.com; yathida.nipha@bankruptcypower.com; michael.berger@ecf.inforuptcy.com
- Michael G D'Alba    mgd@dgdk.com, DanningGill@gmail.com; mdalba@ecf.inforuptcy.com
- Richard K Diamond (TR)    RKDTrustee@dgdk.com; rdiamond@ecf.epiqsystems.com; DanningGill@Gmail.com
- Howard Kollitz    HKollitz@DGDK.Com; DanningGill@gmail.com; hkollitz@ecf.inforuptcy.com
- Dean G Rallis    drallis@afrct.com, msinclair@afrct.com; AFRCTECF@afrct.com; mpham@afrct.com; yblum@afrct.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) November 8, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Sheri Bluebond
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1482 / Courtroom 1475
Los Angeles, CA 90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 8, 2016 | Samuel R.W. Price | /s/ Samuel R.W. Price |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                    **F 9013-3.1.PROOF.SERVICE**