1  WALTER K. OETZELL (State Bar No. 109769)
   *woetzell@dgdk.com*
2  MICHAEL G. D'ALBA (State Bar No. 264403)
   *mdalba@dgdk.com*
3  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   1900 Avenue of the Stars, 11th Floor
4  Los Angeles, California 90067-4402
   Telephone:   (310) 277-0077
5  Facsimile:    (310) 277-5735

6  Attorneys for Plaintiff, Richard K. Diamond, as
   Chapter 7 Trustee
7

8

9                    **UNITED STATES BANKRUPTCY COURT**

10                   **CENTRAL DISTRICT OF CALIFORNIA**

11                        **LOS ANGELES DIVISION**

| | |
|---|---|
| 12  In re | Case No. 2:15-bk-14744-BB |
| 13  VIDEO SYMPHONY ENTERTRAINING, INC., | Chapter 7 |
| 14 | |
| 15       Debtor. | Adv. No. 2:16-ap-01294-BB |
| 16  RICHARD K. DIAMOND, Chapter 7 Trustee, | **PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION** |
| 17       Plaintiff, | |
| 18       vs. | Date:     November 29, 2016 |
| 19  MICHAEL GERARD FLANAGAN, an individual and d/b/a Debt Enforcement Law | Time:     2:00 p.m. <br> Place:     Courtroom 1539 |
| 20  Group and d/b/a Law Office of Mike Flanagan; MICHAEL GERARD | 255 E. Temple St. <br> Los Angeles, CA |
| 21  FLANAGAN, as trustee of the Michael and Alice Flanagan Family Trust dated July 25, | |
| 22  2009; ALICE YICK FLANAGAN, as trustee of the Michael and Alice Flanagan Family | |
| 23  Trust dated July 25, 2009; VIDEO SYMPHONY, LLC, a California limited | |
| 24  liability company, | |
| 25       Defendants. | |

26

27

28

   1364031.3  1514744A

1      Plaintiff, Richard K. Diamond, the Chapter 7 trustee (the "Plaintiff" or the "Trustee") for

2  the Bankruptcy Estate ("the Estate") of Video Symphony Entertraining, Inc. as debtor (the

3  "Debtor" or "VSE"), hereby submits his Reply to the Opposition (the "Opposition") of Defendant

4  Michael Flanagan (the "Defendant" or "Michael") to Plaintiff's Motion for Partial Summary

5  Adjudication.

6

7                      **I.**

8              **INTRODUCTION**

9      Having failed to perfect his interest in the transfer and sale of $1,650,000 worth of

10  "accounts receivables" (the "Accounts") to him, Defendant asks the Court to find that the Accounts

11  are something other than "accounts." This notwithstanding his use of the term "accounts" or

12  "accounts receivable," and no other term, at least twelve times in his two Bills of Sale, which he

13  drafted and executed and admits are "the only documentation of . . . the sale."[1]  First he claims that

14  a school Enrollment Agreement which, in his terms, "explicates" various aspects of the educational

15  program and tuition, is an "instrument" and that this somehow transforms the sale of the Accounts

16  into the sale of "instruments." Alternatively he introduces a somewhat confused exemplar of a note

17  with no apparent nexus to any of the Accounts, except his statement that many of the students

18  signed a note, and claims that the Accounts are "promissory notes." This assertion, again, in direct

19  contravention of the terms of the only documentation of the sale or agreement alleged in respect of

20  the sale.

21      The claims based on the Enrollment Agreement are unconvincing and change nothing. That

22  document is not an "instrument" and it has no value except its claimed purpose to explain certain

23  aspects of the educational program. More importantly, to the extent it is an "instrument," and it is

24  not, it was never transferred by the Bills of Sale or any other agreement. One searches the Bills of

25  Sale in vain to find the inclusion of anything except "accounts" or "accounts receivable" in the sale.

26  ————————————————

27  [1] See Plaintiff's Statement of Uncontroverted Facts at ¶ 13; Defendant's Statement of Genuine
Issues at ¶ 13.

28

1    And the California Commercial Code is quite clear that a description of such "instruments," even if

2    just by listing the category "instrument," is necessary for any such sale or transfer.  "Instruments"

3    are a different form of property than "accounts" and listing one as being sold cannot comprise the

4    other.

5         As to the claims concerning the note, there is no evidence that the exhibit offered or any

6    other note replaced any of the Accounts or changed their character in any way.  Moreover, as with

7    the Enrollment Agreement assertions, neither of the Bills of Sale, again admitted by Defendant to

8    be the only documentation of the sale, refers to "promissory notes," as required by statutory

9    authority.  As above, the categories "accounts" and "promissory notes" are mutually exclusive and

10    using only one, as here, excludes the other.

11         For the reasons stated herein and in the Motion, the Court is respectfully requested to grant

12    the Motion and bring this case to its resolution.

13

14                                              II.

15                                         **ARGUMENT**

16    A.    **The Subject Obligations Are Accounts And Nothing Else**

17         It is undisputed that Defendant acting both as the seller and buyer sold not less than

18    $1,650,000 worth of "accounts receivables" (the "Accounts") to Defendant by two Bills of Sale,

19    the first dated June 15, 2014 and the second dated December 17, 2014 (taken together, the "Bills of

20    Sale").[2]  Defendant also concedes that the sales of these "accounts receivables" are governed by

21    Division 9 of the California Commercial Code.  It is beyond any rational argument that these

22    "accounts receivables" are "accounts" as that term is defined in Section 9102 of the California

23    Commercial Code.

24         As set forth in prior papers, the California Commercial Code defines an "account" as "a

25    right to payment of a monetary obligation, whether or not earned by performance, (i) for property

26

27    [2] Defendant's Statement of Genuine Issues ¶¶ 7-11.

28

1364031.3  1514744A                                    2

1   that is to be sold, leased, licensed, assigned, or otherwise disposed of or, (ii) for services rendered

2   or to be rendered . . . ."[3] This is precisely what was transferred by the Bills of Sale, and this is

3   established by Defendant's own Statement of Uncontroverted Facts,[4] his Declaration in Support of

4   Opposition (the "Flanagan Declaration"), and the Opposition.

5          Defendant's Opposition and Defendant's Statements of Uncontroverted Facts discuss the

6   sale of the Accounts[5] explaining that they were "accounts receivable for outstanding balances owed

7   to Video Symphony by students who had signed an Enrollment Agreement to enroll in a Video

8   Symphony vocational certificate program . . . ."[6] The Flanagan Declaration at ¶ 3 sets forth the

9   function of the Enrollment Agreement as follows:  it "explicated the various terms, conditions, and

10  legal obligations of payment for the Video Symphony program, and itemized the precise amount of

11  tuition that each student would be obligated to pay for the educational services and products

12  provided."[7]

13         Clearly, the above demonstrates that what was transferred by the Bills of Sale falls under

14  Section 9102's definition of "accounts," i.e., that what was transferred were obligations for services

15  rendered ("the educational services") and property sold ("products provided").

16         Finally, the Bills of Sale refer to the property being sold as "accounts" or "accounts

17  receivable" no less than twelve (12) times.  There is no category or description of anything sold or

18  _____

19  [3] California Commercial Code § 9102(a)(2).  Hereafter all statutes referred to by section number refer to provisions of the California Commercial Code unless stated otherwise.

20  [4] Defendant's Statement of Genuine Issues in Opposition to Plaintiff's Motion for Partial Summary Adjudication includes Defendant's own Statement of Uncontroverted Facts.  Plaintiff has

21  concurrently filed a motion to strike those portions of Defendant's Statement of Genuine Issues which are alleged to be uncontroverted facts on the grounds that there is no authority for Defendant

22  to allege uncontroverted facts in opposition to Plaintiff's Motion.  For purposes of the discussion in the within Memorandum of Points and Authorities, Plaintiff is proceeding on the basis that the

23  Court will be considering the Defendant's Statement of Uncontroverted Facts.

24  [5] Plaintiff defined the term "Accounts" as the accounts receivable which were the subject of the Bills of Sale.  See Motion for Partial Summary Adjudication p. 4, lines 4-5.

25  [6] Opposition p. 2, lines 11-20; Defendant's Statement of Uncontroverted Facts ¶¶ 5, 8.

26  [7] Flanagan Decl. ¶ 3.  As discussed below, the Enrollment Agreement itself is not an obligation or promise to pay nor is it any document that somehow changes or affects the nature of the Accounts, except to explain the nature of the obligations giving rise to the rights to payment that are the

27  Account.  Defendant does not claim otherwise.

28

1364031.3  1514744A                                        3

1 transferred by the Bills of Sale other than "accounts" or "accounts receivable."

2 **B.     The Enrollment Agreements Do not Change the Nature of the Accounts.**

3           Defendant attaches an alleged example of an Enrollment Agreement as Exhibit "A" to the

4 Flanagan Declaration which he claims "explicated the various terms, conditions and legal

5 obligations of payment for the Video Symphony Program, and itemized the precise amount of

6 tuition each student would be obligated to pay for the education services and products provided."[8]

7 He appears to argue that the Enrollment Agreement is an "instrument" under the California

8 Commercial Code, an interest in which he could perfect by possession.  However, a review of this

9 Enrollment Agreement demonstrates that it is not an "instrument,"[9] nor is there any evidence

10 before this Court that it is.  Instead, the documents before this Court show that what was transferred

11 were "accounts," nothing else, and the Enrollment Agreement is not a writing that changes or

12 affects the nature of the Accounts in any way.

13           The California Commercial Code defines the term "instrument" as "a negotiable

14 instrument" or "writing that evidences a right to payment of a monetary obligation . . . and is of a

15 type that in ordinary course of business is transferred by delivery with any necessary endorsement

16 or assignment."[10]  Comparing the Enrollment Agreement to this definition, one first sees that it is

17 not a "negotiable instrument."  California Commercial Code § 3104 defines "negotiable

18 instrument" and contains six requirements.  First, it must be a promise or order to pay.  The

19 Enrollment Agreement is neither.  It must be unconditional.  The Enrollment Agreement is not.

20 Instead, it sets forth provisions for cancellation, reduction of amounts owed, and refunds.  This also

21 demonstrates that the Enrollment Agreement fails the third requirement, that it be for a fixed

22 amount of money.  Critically, it must be payable to order or bearer.  The  Enrollment Agreement is

23 not payable to either, or to anyone.  A "negotiable instrument" must be payable on demand or at a

---

24

25 [8] Flanagan Decl. ¶ 3.

26 [9] Plaintiff has concurrently filed evidentiary objections to the Enrollment Agreement, among other things.  For purposes of the discussion in the within Memorandum of Points and Authorities, Plaintiff is proceeding on the basis that the Court will be considering the Enrollment Agreement.

27 [10] California Commercial Code § 9102(a)(47).

28

1364031.3  1514744A                                                    4

1  definite time. One searches the Enrollment Agreement in vain for a definite time. Finally, a

2  "negotiable instrument" must not state any undertaking or require any act other than the payment of

3  money. The Enrollment Agreement sets forth myriad required acts.

4       Nor is there any claim in the Opposition or admissible or even proffered evidence before

5  the Court that the Enrollment Agreement is a "writing that evidences a right to payment of a

6  monetary obligation . . . and is of a type that in ordinary course of business is transferred by

7  delivery with the any necessary endorsement or assignment." Again, it is not a promise to pay nor

8  is it something that could be transferred or serve as collateral. It does not constitute anything of

9  value in and of itself, so it certainly is nothing that would be transferred in the ordinary course of

10 business. Instead, its sole function, as admitted by Defendant, is simply that it "explicated the

11 various terms, conditions, and legal obligations of payment for the Video Symphony program, and

12 itemized the precise amount of tuition that each student would be obligated to pay for the

13 educational services and products provided."

14       Finally, even if there were a remote argument that the Enrollment Agreement was a writing

15 that in ordinary course of business is transferred by delivery with any necessary endorsement or

16 assignment, there is no evidence that Enrollment Agreements were ever transferred. As discussed

17 in detail below, for such a transfer to have occurred, the Bills of Sale would have to sufficiently

18 describe the Enrollment Agreements as the property which was sold. There is nothing in either Bill

19 of Sale stating that Enrollment Agreements were transferred. Even assuming that the Enrollment

20 Agreements are "instruments," and they are not, the Bills of Sale could have identified them by

21 category as "instruments," in the same way that the Bills of Sale identified the Accounts which

22 were transferred by listing them by category as "accounts" or "accounts receivables." Again,

23 neither of the Bills of Sale lists "instruments" as being transferred, and the listing of "accounts" or

24 "accounts receivables" does not include or work to transfer "instruments." The California

25 Commercial Code's definition of "accounts" specifically states that "[t]he term does not include (i)

26

27

28

1364031.3  1514744A                                          5

1  rights to payment evidenced by chattel paper or an instrument . . . ."[11]  The categories of "accounts"

2  and "instruments" are therefore mutually exclusive, listing one type of property transferred

3  excludes the other, and the Bills of Sale list "accounts" not "instruments."

4       The Enrollment Agreement is not a writing that changes or affects the nature of the

5  Accounts in any way, nor does the Opposition appear to argue that it does.  Instead, the alleged

6  Enrollment Agreements simply lay out the details of the program, the cost for the program, what

7  amounts are refundable upon withdrawal at various times, and the services rendered and products

8  provided which give rise to the right to payment in respect to the Accounts.

9  **C.     The Accounts are not Promissory Notes.**

10       Obviously realizing that he did not perfect his interest in the sale of the Accounts,

11  Defendant attempts to introduce an extraneous document to argue that the Accounts are somehow

12  "promissory notes."  He does this by employing a little subterfuge which he obviously hopes this

13  Court will not notice.  The Opposition states that, "many of the students executed a Student Loan

14  Promissory Note and Disclosure ("Promissory Note") which was signed by the student and any

15  cosigner, and expressly detailed the tuition, finance charges, total payments, and payment schedule

16  for repaying the student loans."[12]  Defendant does not say how many of the students executed such

17  a document or even if any of the students whose Accounts were transferred pursuant to the Bills of

18  Sale had executed such a document.  "Many" does not mean "most," much less "all."  The

19  Opposition then goes on to argue as if all of the Accounts transferred by the Bills of Sale were the

20  subject of a corresponding Promissory Note and that the Accounts transferred by the Bills of Sale

21  have now magically been transformed into being all "promissory notes," categories of property

22  which the Bills of Sale simply did not transfer.

23       Initially, the Court will notice that nowhere in Defendant's Statement of Genuine Issues in

24

25  [11] California Commercial Code § 9102(a)(2).

26  [12] Opposition p. 1, line 20 to p. 2, line 2 (emphasis added).  Plaintiff has concurrently filed
    evidentiary objections to the Promissory Note, among other things.  For purposes of the discussion
27  in the within Memorandum of Points and Authorities, Plaintiff is proceeding on the basis that the
    Court will be considering the Promissory Note.

28

1364031.3  1514744A                                    6

1    Opposition has Defendant made any reference to any "promissory note" or that any of the

2    Accounts were the subject of "promissory notes." Similarly, the Flanagan Declaration states that,

3    "many of the students executed a Student Loan Promissory Note and Disclosures," but it does not

4    state that all or even <u>any</u> of the obligations transferred by the Bills of Sale were Promissory Notes.

5    Finally, one searches the Bills of Sale in vain to find any reference whatsoever to the sale of

6    Promissory Notes.

7        The latter fact is critical because if the Bills of Sale do not include or describe, or even

8    mention "promissory notes" as being transferred thereby, then the Bills of Sale did not transfer any

9    "promissory notes." Initially, under California Commercial Code Section 9109(a)(3) both the sale

10    of "accounts" and the sale of "promissory notes" are governed by Division 9 which, of course,

11    Defendant concedes.

12        In addition, the Bills of Sale are "security agreements," which are also subject to the

13    provisions of Division 9. The California Commercial Code defines a "security interest" as

14    including "any interest of a . . . buyer of accounts, . . . a payment intangible, or a promissory note in

15    a transaction that is subject to Division 9."[13] The sale of accounts, payment intangibles, and

16    promissory notes are subject to Division 9.[14] Accordingly, a <u>security interest</u> includes <u>the interest</u>

17    <u>of a buyer of accounts, payment intangibles, or promissory notes</u>. A <u>security agreement</u> is "an

18    agreement that <u>creates or provides for a security interest</u>."[15] The Bills of Sale create or provide for

19    the interest of the buyer in a sale, and, as such, are "security agreements."

20        For the Bills of Sale/security agreements to be effective and transfer the property claimed

21    transferred thereby, the "security interest" must attach. Here, the security interest may have

22    attached and transferred Video Symphony's interest in the Accounts, but it did not attach or

23    transfer any interest in Promissory Notes.

24        This is because the California Commercial Code requires that the Bills of Sale/security

25    _____

26    [13] California Commercial Code § 1201(a)(35).

     [14] California Commercial Code § 9109(a)(3).

27    [15] California Commercial Code § 9102(a)(74).

28

1   agreements must "provide a description of the collateral" to be enforceable, and the Bills of Sale

2   here do not list "promissory notes" or "instruments" or provide any required description.[16] Section

3   9108 covers the sufficiency of description of the property transferred by a bill of sale/security

4   agreement, and sub-section (b)(2) states that listing the property by category is a reasonable

5   identification. "Accounts" are such a category, and are defined in § 9102(a)(2). "Promissory

6   Notes" are also such a category, and they are defined as a sub-category of "instruments" by §

7   9102(a)(65).

8        But the categories of "accounts" and "instruments" are mutually exclusive, and listing one

9   such category excludes the other unless the other is also listed. California Commercial Code §

10  9102(a)(2) specifically states that the term "accounts" "does not include (i) rights to payment

11  evidenced by chattel paper or an instrument . . . ." Here, there is no reference whatsoever in either

12  Bill of Sale to "promissory notes" and, thus, any sale of such property claimed to be by such Bills

13  of Sale is unenforceable as to "promissory notes" and no "promissory notes" were transferred by

14  the Bills of Sale. Defendant has introduced no evidence that there was any sale of student

15  obligations other than by and pursuant to the Bills of Sale. Again, the two Bills of Sale mention

16  "accounts" or "accounts receivable" at least twelve times but, again, there is no reference to

17  "promissory notes" or "instruments" being sold.

18        Defendant makes a last ditch argument that he is in possession of the Promissory Notes, so

19  there must have been an agreement based on his reading of Section 9203(b)(3)(B). However, this

20  argument is frivolous, circular, and does not comport with the undisputed facts. Nowhere in

21  Defendant's Opposition, Statement of Uncontroverted Facts, or the Flanagan Declaration is there

22  any assertion that there was any agreement transferring the subject obligations other than the two

23  Bills of Sale. Nor do either of the Bills of Sale refer to possession of any "promissory note." In

24  fact, section 5 of the Bills of Sale drafted by Defendant, promises to grant non-exclusive access to

25  student data, which fact is consistent with the sale of "accounts," not the transfer of possession of

26

27  [16] California Commercial Code § 9203(b)(3)(A).

28

1   "promissory notes."

2         Finally, Defendant's argument that his interest in "promissory notes" was automatically

3   perfected under §9309(4) entirely misses the point.  Although the sale of "promissory notes" is

4   perfected on attachment, assuming one or more "promissory note," and there is no admissible

5   evidence of any particular such note or notes before this Court, an interest must attach for the sale

6   to be enforceable.  The Bills of Sale/security agreements here did not describe any category of

7   property other than "accounts" and, as such, the interests never attached to "promissory notes."

8         In sum, the obligations are "accounts," the Defendant did not perfect his interest in the sale

9   of those "accounts" by the very simple act of filing the requisite financing statement, and this Court

10   should enter judgment against Defendant in the full amount of the Accounts transferred as specified

11   by Defendant acting on behalf of both the seller and the buyer.

12   ### III.

13   ### CONCLUSION

14         For the reasons set forth above, the Trustee requests that the Court grant the Motion and

15   enter judgment against Defendant in the amount requested.  The Trustee also requests that the

16   Court provide such other and further relief as the Court deems just and proper.

17

18   DATED:  November 15, 2016          DANNING, GILL, DIAMOND & KOLLITZ, LLP

19

20            By:

21            WALTER K. OETZELL
         Attorneys for Plaintiff, Richard K. Diamond, as

22            Chapter 7 Trustee

23

24

25

26

27

28

1364031.3  1514744A         9

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1900 Avenue of the Stars, 11th Floor, Los Angeles, CA 90067-4402.

A true and correct copy of the foregoing document entitled (*specify*): PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On November 15, 2016 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**: On November 15, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on November 15, 2016, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

PERSONAL DELIVERY: ALSSI To Be Delivered By November 16, 2016
The Honorable Sheri Bluebond
U.S. Bankruptcy Court
Roybal Federal Building
Bin outside of Suite 1482
255 E. Temple Street
Los Angeles, CA 90012

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

November 15, 2016        Cindy Cripe
_____        _____        _____
Date                           Printed Name                  Signature

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                **F 9013-3.1.PROOF.SERVICE**

## ADDITIONAL SERVICE INFORMATION (if needed):

### 1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

Michael Jay Berger on behalf of Other Professional Michael Jay Berger
michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com

Michael G D'Alba on behalf of Plaintiff Richard K. Diamond, Chapter 7 Trustee, Plaintiff
mgd@dgdk.com, DanningGill@gmail.com;mdalba@ecf.inforuptcy.com

Richard K Diamond (TR)
RKDTrustee@dgdk.com, rdiamond@ecf.epiqsystems.com;DanningGill@Gmail.com

Howard Kollitz on behalf of Plaintiff Richard K. Diamond, Chapter 7 Trustee, Plaintiff
HKollitz@DGDK.Com, DanningGill@gmail.com;hkollitz@ecf.inforuptcy.com

Samuel Price on behalf of Defendant Video Symphony, LLC
sprice@pooleshaffery.com, sabrignani@pooleshaffery.com

Samuel Price on behalf of Defendant Alice Yick Flanagan, as trustee of The Michael and Alice Flanagan
Family Trust dated July 25
sprice@pooleshaffery.com, sabrignani@pooleshaffery.com

Samuel Price on behalf of Defendant Michael Gerard Flanagan
sprice@pooleshaffery.com, sabrignani@pooleshaffery.com

Samuel Price on behalf of Defendant Michael Gerard Flanagan, as trustee of The Michael and Alice
Flanagan Family Trust dated July 25, 2009
sprice@pooleshaffery.com, sabrignani@pooleshaffery.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

### 2. SERVED BY U.S. MAIL

| Attorney for Defendant Michael G. Flanagan | Debtor | Attorney for Debtor Video Symphony Entertraining, Inc. |
|---|---|---|
| POOLE & SHAFFERY, LLP<br>Samuel R.W. Price, Esq.<br>400 South Hope Street, Suite 1100<br>Los Angeles, CA 90071 | VIDEO SYMPHONY<br>ENTERTRAINING, INC.<br>266 E Magnolia Blvd<br>Burbank, CA 91502 | Dean G Rallis, Jr., Esq.<br>ANGLIN, FLEWELLING,<br>RASMUSSEN, CAMPBELL, et al.,<br>199 South Los Robles Avenue<br>Suite 600<br>Pasadena, CA 91101-2459 |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**